UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 14 C 3876 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| SCOTT LADANY, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

The case is before the Court on two related motions: SDL Building Enterprises, LLC's Rule 20 motion seeking leave to join as a counterclaim plaintiff against the United States [32]; and the United States' motion to reconsider the ruling allowing defendant Scott Ladany to file a counterclaim [35]. For the following reasons, the Court strikes the proposed counterclaim and denies as moot SDL's joinder motion and the United States' motion for reconsideration.

Background & Procedural History

The United States, on behalf of the Small Business Administration ("SBA"), sued Scott Ladany ("Ladany"), seeking judgment on a promissory note for which Ladany executed an unconditional guarantee. In its Amended Complaint [15], the United States alleged that, pursuant to the Small Business Act, an entity known as SomerCor 504 Inc. ("SomerCor 504") made a loan to Jemm Wholesale Meat Company Inc. ("Jemm") and SDL Building Enterprises, LLC ("SDL"); the loan was secured by a note, which was, in turn, unconditionally guaranteed by Ladany.

Amended Complaint [15], ¶¶5-6. SomerCor 504 endorsed and assigned the note to the SBA, which is the present owner and holder of the note. *Id.*, ¶7. Jemm and SDL defaulted on the payments due under the note; the last payment was processed on August 1, 2011 and had a July 29, 2011 effective date. *Id.*, ¶8. According to the Amended Complaint, there was due and owing on the Note "the principal sum of $1,462,865.01, plus accrued interest in the amount of $254,198.01 as of August 28, 2014, with interest accruing thereafter at the rate of $226.32 per day until paid." *Id.*, ¶9. The promissory note and unconditional guarantee are attached as Exhibits A and B to the Amended Complaint [15-1], [15-2]. Ladany signed the promissory note on behalf of SDL [15-1], and he signed the unconditional guarantee individually [15-2]. The assignment, showing that SomerCor 504 assigned the note to the SBA on June 7, 2007, is attached as Exhibit C to the Amended Complaint [15-1].

In his Answer to the Amended Complaint, Ladany (the only named defendant) admitted that the loan was made, that he signed the guarantee, that the note was assigned, and that "an event of default occurred under the Note and that the last payment was made to the SBA in or about July 2011." Answer [16], ¶¶5-8. Ladany also asserted several defenses, including that the guaranty was invalid, that the claim was barred by the applicable statute of limitations, that the SBA hindered SDL's ability to perform under the Note, and that the SBA failed to mitigate its damages. *Id.*, ¶¶1-23. Ladany's Answer did not assert any counterclaim.

At a status hearing on July 20, 2015, after reporting that discovery was nearly complete, Ladany moved orally to file an amended answer and counterclaim purportedly based upon certain information obtained during his deposition of the SBA's Rule 30(b)(6) witness. At that time, Ladany gave no indication that the amended counterclaim would seek to join additional parties; nor did he indicate that the amended counterclaim would expand the nature and scope of the case, and the requisite discovery, currently pending before the Court. In fact, Ladany suggested the opposite:

> MR. BIXTER: And then one other thing, your Honor. Due to new evidence through discovery, we're looking to amend our answer. We will be deleting certain affirmative defenses that have not come to fruition, but we will also be adding a counterclaim. I talked to Mr. Ling. He seems to be fine with that. So I think we probably should put that on the schedule as well.
>
> THE COURT: How long do you need to amend your answer?
>
> MR. BIXTER: I believe 40 days would be fine because we'll get all the documents from Mr. Ling.
>
> THE COURT: Is your answer going to affect discovery in terms of what the government is seeking?
>
> MR. BIXTER: The facts to the counterclaim are similar to one of our affirmative defenses as well. So I don't think it would affect it, but I leave that to Mr. Ling.
>
> THE COURT: Well, he's not -- have you discussed what the amended complaint's going to look like?
>
> MR. BIXTER: I explained that it has to do with our -- a transfer of the land trust interest, of which was one of our defenses. But, you know, if Mr. Ling wants to hold discovery open for that, he's more within his right to do so.

> MR. LING: Judge, it may be necessary. I don't have the exact -- obviously I don't have the amended answer and the counterclaim in front of me. Perhaps we could go ahead and do that. Perhaps we could discuss the entire matter on the 19th as well.
>
> THE COURT: Why does it take 45 -- or 40 days to amend your answer?
>
> MR. BIXTER: I'm fine with 30. I'm just concerned that --
>
> THE COURT: Can you do it by August 19th?
>
> MR. BIXTER: Yeah, I think we can get it done by the same 30 days.
>
> THE COURT: All right. So leave to file an amended answer is granted. If you can do it by August 18th, that way I have a chance to read it as well.
>
> MR. BIXTER: Okay.
>
> THE COURT: And then we'll see how that -- then both the parties can look and see how it might affect discovery in terms of any additional issues that might be presented.

Transcript of Proceedings of July 20, 2015, 13:1–14:15. Based on this discussion, the Court granted the motion and directed Ladany to file his amended answer and counterclaim by August 18, 2015 [30].

On that date, Ladany filed a pleading that was a combined amended answer, amended affirmative defenses and counterclaim [33]; and SDL filed a motion seeking to join as counterclaim plaintiff against the United States [32]. In the proposed counterclaim, Ladany and SDL allege that in June 2006, before SomerCor 504 made the loan to SDL, Charter One Bank ("Charter One") entered into a loan agreement with SDL and Jemm whereby Charter One agreed to loan SDL and Jemm $4,420,000. Proposed Counterclaim [33] ¶3. The Charter One loan was

4

secured by a first-position security interest in the Jemm production facility located at 4649 West Armitage Avenue in Chicago (the "Armitage property"). *Id.,* ¶4. A year later, in June 2007, SomerCor 504 entered into a loan agreement with SDL and Jemm whereby SomerCor 504 agreed to loan SDL and Jemm $1,612,000; the purpose of this loan, like the Charter One loan, was to finance improvements to the Armitage property so that it could continue to qualify as a USDA-certified food processing facility. *Id.*, ¶¶5-6. In connection with the SBA loan, the SBA was granted a second-position security interest in the Armitage property. *Id.*, ¶7.

The proposed counterclaim further alleges that, in early 2008, Jemm failed to make payments under the Charter One Loan and the SBA Note. As a result, Charter One filed a foreclosure complaint and, on June 3, 2008, Jemm executed an assignment for benefit of creditors creating a liquidating trust for all of Jemm's property and assets with William A. Brandt, Jr. designated as the Trustee-Assignee. Under the agreement governing the trust, Brandt had the authority to collect and sell all Jemm assets and, to that end, he held an auction sale of Jemm's assets in July 2008. [33], ¶¶11-16. On July 16, 2008, Brandt and a buyer (Best Chicago Meat Company, LLC) entered into an asset purchase agreement whereby substantially all of Jemm's assets were purchased and transferred to the buyer. *Id.*, ¶25. The proposed counterclaim also alleges that the buyer's purchase obligation was conditioned on obtaining the included assets free and clear of any claims, liens or encumbrances, and that, in exchange for payment from the net proceeds of the sale, the SBA agreed to release its claims, liens and encumbrances with respect to

5

the assets acquired under the APA. *Id.*, ¶¶29-30. The buyer paid $700,000 for Jemm's assets and the SBA received $219,917.96 from the sale. *Id.*, ¶¶37-38.

Thereafter, the buyer and SDL, Jemm and a Land Trust held by SDL and Jemm entered into a lease to allow the buyer to operate the Armitage Property. Under the lease, the buyer paid SDL $22,000 per month in rent, plus payments for taxes and maintenance. This amount was sufficient to allow full payments to Charter One and to the SBA under the prior notes. *Id.*, ¶¶43-44. In late 2009, the buyer and SDL decided that they wanted to extend the term of the lease; and at that time, Brandt decided that it would be a good idea to transfer Jemm's 50% beneficial interest in the Land Trust to SDL to "conclude the assignment for the benefit of creditors and fully divest himself of Jemm's assets." *Id.*, ¶45. The proposed counterclaim further alleges that the SBA declined to go along with this transfer and that, as a result, in March 2011, RBS Citizens Bank, Charter One's successor, renewed the foreclosure case. *Id.*, ¶60. A receiver was appointed, and he continued to collect rent on the property. The SBA did not request payment from the receiver for amounts due under the SBA note. *Id.*, ¶¶63-64, 66-69, 71. Ultimately, a judicial sale of the Armitage Property was held on October 15, 2014, and the buyer acquired the Property for approximately $1.8 million, which counterclaim plaintiffs allege was substantially lower that any appraised value. *Id.*, ¶¶84, 85. The proposed counterclaim also alleges that the SBA's refusal to release its liens and refusal to sanction the transfer of Jemm's interest in the beneficial

trust significantly depressed the value of the property, leaving nothing for the SBA once the Charter One note was paid. *Id.*, ¶¶86-87.

As a result, the proposed counterclaim seeks to assert the following new claims on behalf of Ladany: (1) a breach of contract claim against the SBA based upon the SBA's failure to release its claims, liens and encumbrances against the 50% Jemm Beneficial Interest; (2) a breach of contract and implied covenant of good faith and fair dealing claim against the SBA based upon the SBA's failure to release its claims and encumbrances against the 50% Jemm Beneficial Interest; (3) an estoppel claim; and (4) a slander of title claim against the SBA. Amended Answer and Counterclaims [33], Counts I through IV. Ladany seeks $3,000,000 on each claim. *Id.*

In addition, the proposed amended counterclaim also seeks to assert the following claims on behalf of SDL: (1) a breach of contract claim against the SBA based upon the SBA's failure to release its claims, liens and encumbrances against the 50% Jemm Beneficial Interest; (2) a breach of contract and implied covenant of good faith and fair dealing claim against the SBA based upon the SBA's failure to release its claims and encumbrances against the 50% Jemm Beneficial Interest; (3) a promissory estoppel claim; and (4) a slander of title claim against the SBA. Amended Answer and Counterclaims [33], Counts V – VIII. SDL also seeks $3,000,000 in connection with each claim.

At the August 19, 2015 status hearing, the United States objected to the dramatic expansion of the case in this manner and argued that the proposed

counterclaim was deficient in several respects – not the least of which was that the claims were barred by the doctrine of sovereign immunity. The Court set a briefing schedule on the issue of whether the counterclaim should be allowed, and the matter is now fully briefed.

Discussion

As explained above, the case is before the Court on SDL's motion to join and on the United States' motion to reconsider the decision to allow Ladany to file the proposed counterclaim. In response to the latter, Ladany argues that the Court lacks any basis to reconsider its decision to allow him to file his counterclaim. Although the Court granted Ladany an opportunity to amend his answer, when it did so, it did not have before it the proposed pleading; nor did Ladany explain the basis for any claims he intended to assert against the United States. As a result, today's decision is not so much a **re**-consideration but an initial consideration of Ladany's proposed amended pleading based upon a complete record. Before asking whether SDL may properly be joined as a counterclaim plaintiff, the Court must first determine whether the proposed amended pleading should be allowed.

Initially, The United States argues that the claims are barred by the doctrine of sovereign immunity. To assert a counterclaim against the United States or one of its agencies in federal court, defendant must show that he is suing under a law that waives the sovereign immunity of the United States to the cause of action. *EEOC v. Northern Star Hospitality Inc.*, No. 12 C 214, 2013 WL 4713794, at *1 (W.D. Wis. Feb. 8, 2013)(citing *United States Postal Service v. Flamingo Industries (USA) Ltd.*,

8

540 U.S. 736, 744 (2004); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003). Assuming certain preconditions can be met, multiple statutes provide for a waiver of the sovereign immunity of the United States.[1]

For present purposes, however, the Court need not decide whether the proposed claims are barred under a theory of sovereign immunity. Given the posture of this case, the issue is not whether the United States has waived its sovereign immunity, but whether, at this late stage of the proceedings, Ladany should be allowed to amend and supplement his responsive pleading as he proposes to do. That issue is governed by Federal Rule of Civil Procedure 15(a).

Under Rule 15(a), leave to amend and supplement pleadings should be freely given before trial. Fed. R. Civ. P. 15(a). Indeed, this is precisely why the Court was inclined initially to allow Ladany to amend his answer. But leave to amend may be denied in some circumstances: where, for example, prejudice to the parties will result. *In re Canopy Fin., Inc.*, No. 09-44943, 2015 WL 110595, at *2 (N.D. Ill. Jan.

---

[1] For example, the Tucker Act waives the sovereign immunity of the United States, but only if certain requirements are met. *Greenleaf Limited Partnership v. Illinois Housing Development Authority*, Nos. 08 C 2480 and 08 C 3446, 2009 WL 449100, at *3 (N.D. Ill. Feb. 23, 2009); 28 U.S.C. § 1491(a)(1). Additionally, the Administrative Procedure Act waives sovereign immunity for non-monetary actions against the government and provides for judicial review in the federal district courts, s*ee Greenleaf*, 2009 WL 449100, at *4; 5 U.S.C. §§ 701-06, even though Ladany's proposed counterclaim in this case seeks money damages, thus making the APA inapplicable. Likewise, 15 U.S.C. § 634(b) provides that the administrator of the SBA, in the "performance of, and with respect to, the functions, powers, and duties vested in him by this chapter may . . . sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property . . . ." Ladany relies on this statute, but it is not clear that this provision applies, as Ladany's counterclaim does not name the Administrator or the SBA; nor is it clear that the counterclaim is asserted because of any misstep in the performance of official duties.

7, 2015). "The amount of unfair prejudice to the nonmoving party is a 'significant factor' in determining whether to grant leave to amend...." *Marion T, LLC v. Formall, Inc.*, No. 1:12-CV-456, 2014 WL 6605588, at *2 (N.D. Ind. Nov. 20, 2014)(citing *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 352 (N.D.Ind.2010)(citing *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004)). "Undue prejudice occurs when the amendment 'brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when the additional discovery is expensive and time-consuming." *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999) (quoting *A. Cherney Disposal Co. v. Chicago & Suburban Refuse Disposal Corp.*, 68 F.R.D. 383, 385 (N.D. Ill. 1975)).

Having now seen the proposed pleading, the Court finds that the United States would be unduly prejudiced by Ladany's proposed counterclaim for several reasons at this point in the proceedings. For example, the proposed amended pleading significantly expands the scope of this litigation, bringing in additional claims and parties. Furthermore, allowing the amendment would require the Court not just to reopen discovery, which closed September 11, 2015, but to significantly expand the scope of discovery to include additional timeframes, transactions, parties and witnesses. Accordingly, the Court declines to allow Ladany to amend his responsive pleading to add the proposed permissive counterclaim.

Ladany also argues that his proposed amended pleading and the joinder of SDL in that pleading are proper under Rules 13 and 20. The goal of joinder under

10

Rule 20 is to promote judicial efficiency. *Flava Works, Inc. v. Does,* No. 12 C 7869, 2014 WL 222722, at *5 (N.D. Ill. Jan. 21, 2014). That goal is not furthered here, including for the reasons just explained.

Rule 13 might have supported Ladany's argument if the proposed counterclaim were compulsory – that is, if it arose out of the transaction or occurrence that is the subject matter of the United States' claim, but that is not the case here (nor do Ladany or SDL claim that it is compulsory). The United States' complaint arises out of the June 2007 loan made by SomerCor 504 to Jemm and assigned to the SBA; Ladany signed the promissory note on behalf of Jemm, and he executed an unconditional guarantee individually. Ladany admits that he signed the guarantee, admits the existence and validity of the loan and admits that Jemm defaulted on its payments under the note. The proposed counterclaim does not challenge the validity of the unconditional guarantee. Rather, the counterclaim arises out of the Charter One loan and foreclosure action, not the loan initially made by SomerCor 504 and assigned to the SBA. The breach of contract claims relate not to obligations the SBA had under the SBA loan, but to obligations Ladany and SDL claim the SBA undertook in connection with the receiver's attempts to work out a sale of Jemm's asserts as part of his handling of the foreclosure action arising from the default on the Charter One loan. Although the proposed counterclaim attempts to lump together all of the various transactions relating to the Armitage Property, a close reading reveals that the judicial sale and the asset purchase agreement are not related to the promissory note and unconditional

11

guarantee which have long been the subject of litigation here. Instead, the allegations in the proposed counterclaim concern conduct and obligations arising under the asset purchase agreement and out of the foreclosure suit, whereas the United States' claims here arise simply under the promissory note and the unconditional guarantee. The loans may have had a common purpose (*i.e.*, the financing of improvements to the Armitage Property), but they are separate transactions executed by different parties. To the degree Ladany wishes to file such claims in another court, those matters are not before this Court.

## Conclusion

For the reasons explained above, the Court declines to allow Ladany to bring the proposed counterclaim in this lawsuit. The counterclaim is stricken, and SDL's motion for joinder [32] is denied as moot. The United States' motion for reconsideration [35] is denied as moot.

Date: December 18, 2015

ENTERED:

_____
J(
United States District Judge